Daniel MARKS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A04–0607–CR–392.

Court of Appeals of Indiana.

April 18, 2007.

Teresa D. Harper, Bloomington, IN, Patrick J. Arata, Arata Law Firm, Fort Wayne, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Daniel Marks appeals his conviction for class A misdemeanor operating a vehicle while intoxicated ("OWI") and judgments for the class C infractions of driving without a license and failing to yield the right-of-way. We affirm.

### Issues

We restate Marks's issues as follows:

I. Whether the trial court committed reversible error in instructing the jury on impairment; and

II. Whether the trial court committed reversible error in responding to a jury question in Marks's absence.

### Facts and Procedural History[1]

The facts most favorable to the jury's verdict indicate that shortly after midnight on May 2, 2004, Allen County Reserve Officer Jim Hartney was driving in the right-hand northbound lane on State Road 3, a four-lane divided highway. Marks, who was traveling eastbound on Till Road, turned northbound onto State Road 3 and

---

1. We remind Marks's counsel that the facts in an appellant's brief "shall be stated in accordance with the standard of review appropri- ate to the judgment or order being appealed." Ind. Appellate Rule 46(A)(6)(b).

immediately pulled into the right-hand lane in front of Officer Hartney. Officer Hartney had to brake "hard" to avoid colliding with Marks. Tr. at 175. Officer Hartney stopped Marks and requested his driver's license and identification.

Officer Hartney observed that Marks had a "hard time" getting his driver's license out of its holder and "noticed the strong smell of alcoholic beverage[.]" *Id.* at 146. Marks's driver's license was expired. Officer Hartney asked Marks how much he had had to drink. Marks admitted to having "a few beers at a friend's that night." *Id.* at 150. Officer Hartney handcuffed Marks and drove him toward the city-county building. When Officer Hartney stopped at a red light, Marks told him that he needed to use the restroom. Officer Hartney stated that they would soon reach their destination. Before the light turned green, Marks urinated on himself. Marks told Officer Hartney that he had been taking a medication that caused frequent urination. Officer Hartney told Marks that he had taken the same medication and had not experienced that side effect. Officer Hartney asked Marks, "[C]ould it have been all the beer you've been drinking [tonight]?" *Id.* at 153. Marks replied, "Well, yeah, it coulda been that[.]" *Id.* When Officer Hartney arrived at the city-county building, he transferred custody of Marks to Fort Wayne Police Officer Thomas Andrews, who administered a breathalyzer test. Officer Andrews noticed that Marks had "a strong odor of alcohol[,]" that his face was flushed, that his eyes were red, bloodshot, and watery, and that he was "walking a little swayed[.]" *Id.* at 194, 195.

The State charged Marks with class A misdemeanor OWI, class C misdemeanor operating a vehicle with a blood alcohol concentration ("BAC") of at least 0.08%, class C infraction driving without a license,

and class C infraction failing to yield the right-of-way. At trial, Marks successfully moved to suppress the breathalyzer test result based on a failure to follow statutory BAC testing procedures, and the trial court granted the State's motion to dismiss the class C misdemeanor count. The jury convicted Marks on the remaining counts. Marks now appeals.

## Discussion and Decision

### I. Jury Instruction

Pursuant to Indiana Code Section 9–30–5–2, the State charged Marks with class A misdemeanor operating a vehicle while intoxicated. Indiana Code Section 9–13–2–86 defines "intoxicated" in pertinent part as under the influence of alcohol "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Under Indiana Code Section 9–30–5–2, "there is no statutory requirement of proof of a particular blood alcohol content above which a person is intoxicated." *Pickens v. State,* 751 N.E.2d 331, 335 (Ind.Ct.App. 2001). Proof of intoxication may be established by a showing of impairment. *Id.*

Over Marks's objection, the trial court read the following instruction on impairment to the jury:

> Evidence of the following can establish impairment:
>
> (1) the consumption of significant amounts of alcohol;
>
> (2) impaired attention and reflexes;
>
> (3) watery or bloodshot eyes;
>
> (4) the odor of alcoholic beverage on the breath;
>
> (5) unsteady balance;
>
> (6) failure of field sobriety tests;
>
> (7) slurred speech

Appellant's App. at 119. Marks claims that the trial court committed reversible error in giving this instruction.

We have stated that the purpose of an instruction

is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion.

*Ray v. State,* 846 N.E.2d 1064, 1066 (Ind. Ct.App.2006) (citations and quotation marks omitted), *trans. denied.*

█ The instruction at issue is based on language from several opinions of this Court, the most recent of which is *Ackerman v. State,* 774 N.E.2d 970 (Ind.Ct.App. 2002), *trans. denied* (2003). *See id.* at 983 (listing same seven factors as evidence that can establish impairment); *see also Pickens,* 751 N.E.2d at 335 (same); *Ballinger v. State,* 717 N.E.2d 939, 943 (Ind.Ct.App. 1999) (first case to compile list of seven factors) (citing *Jellison v. State,* 656 N.E.2d 532, 535–36 (Ind.Ct.App.1995), and *Staley v. State,* 633 N.E.2d 314, 317–18 (Ind.Ct.App.1994)). In *Ackerman, Pickens,* and *Ballinger,* that language was used in addressing a challenge to the sufficiency of the evidence on appeal, not in instructing the jury at trial. The mere fact that certain language is used in appellate court opinions does not make it proper language for a jury instruction, but there is no blanket prohibition against using such language in jury instructions. *Gravens v. State,* 836 N.E.2d 490, 494 (Ind.Ct.App. 2005), *trans. denied* (2006).

In challenging the propriety of the instruction, Marks relies on three cases in which our supreme court found error in the giving of jury instructions based on language borrowed from appellate opinions. In the first of these, *Dill v. State,* 741 N.E.2d 1230 (Ind.2001), the court held that it was error to instruct the jury that a

defendant's flight after the commission of a crime, although not proof of guilt, may be considered as evidence of consciousness of guilt. The court determined that the instruction was confusing, had significant potential to mislead the jury, and unnecessarily emphasized specific evidence. *Id.* at 1232.

In *Ludy v. State,* 784 N.E.2d 459 (Ind. 2003), the court held that the trial court erred in giving the following instruction: " 'A conviction may be based solely on the uncorroborated testimony of the alleged victim if such testimony establishes each element of any crime charged beyond a reasonable doubt.' " *Id.* at 460. The court determined that the instruction was

problematic for at least three reasons. First, it unfairly focuses the jury's attention on and highlights a single witness's testimony. Second, it presents a concept used in appellate review that is irrelevant to a jury's function as factfinder. Third, by using the technical term "uncorroborated," the instruction may mislead or confuse the jury.

*Id.* at 461.

Most recently, in *Ham v. State,* 826 N.E.2d 640 (Ind.2005), the court held that the trial court erred in instructing the jury that a defendant's " 'refusal to submit to a chemical test may be considered as evidence of intoxication[.]' " *Id.* at 641. The court agreed with the defendant that the instruction "misleads the jury by unnecessarily emphasizing one evidentiary fact." *Id.* at 642. The court stated, "Whether a defendant's refusal to submit to a chemical test is evidence of intoxication or merely that the defendant refused to take the test is for the lawyers to argue and the jury to decide." *Id.*

█ We believe that the instruction in this case suffers from the same infirmities as those in *Dill, Ludy,* and *Ham.* It unnec-

essarily emphasizes certain evidence and invites the jury "to violate its obligation to consider all the evidence." *Ludy*, 784 N.E.2d at 462; *see also Cox v. State*, 512 N.E.2d 1099, 1101 (Ind.1987) ("[N]o instruction should single out certain portions of evidence[.]"); *Dedrick v. State*, 210 Ind. 259, 281, 2 N.E.2d 409, 419 (1936) ("An instruction is properly refused which singles out a portion of the evidence and undertakes to direct the jury as to its duties without a consideration of other evidence in the case.").[2] It is also confusing and misleading. In stating that certain specific evidence can establish impairment, the instruction leaves jurors to wonder whether other evidence—such as losing control of one's bladder—cannot be used to establish impairment. Also, the instruction does not define the phrase "significant amounts of alcohol," which leaves jurors to guess whether "a few beers" meets that threshold. Moreover, the instruction includes two evidentiary factors—failure of field sobriety tests and slurred speech—that the State did not establish at Marks's trial.[3] While the challenged language might be a convenient checklist for an appellate court in evaluating the sufficiency of the evidence regarding a defendant's impairment, we conclude that the trial court abused its discretion in using it to instruct the jury.

 That said, "we must disregard any error that does not affect the substantial rights of a party." *Ludy*, 784 N.E.2d at 462 (citing Ind. Trial Rule 61). "Errors

in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the instruction would not likely have impacted the jury's verdict." *Randolph v. State*, 802 N.E.2d 1008, 1013 (Ind.Ct.App.2004), *trans. denied.* Marks did not testify at trial; Officers Hartney and Andrews were the only witnesses. On appeal, Marks casts their testimony in a favorable light and points to discrepancies in their deposition and trial testimony. The undisputed evidence, however, indicates that Officer Hartney had to brake "hard" to avoid colliding with Marks, who turned in front of him onto State Road 3; that Marks admitted to having "a few beers" that night, smelled strongly of alcohol, and had red, watery, bloodshot eyes; that he had a "hard time" getting his driver's license out of its holder; that he urinated on himself in Officer Hartney's vehicle; and that he acknowledged that his beer consumption could have caused his loss of bladder control. Based on the foregoing, we conclude that Marks's OWI conviction is clearly sustained by the evidence and that the instruction would not likely have impacted the jury's verdict, i.e., that the giving of the instruction was harmless error.

### II. Ex Parte Communication

After entering judgment on the jury's verdict, the trial court informed counsel that the jury had asked the following question during deliberations: "Since the charge of Operating with .08% or More

2. Here, the trial court instructed the jury that "[i]n deciding this case, you must determine the facts from a consideration of all the evidence and the law from these instructions and find your verdict accordingly." Appellant's App. at 107.

3. *Cf. Murray v. State*, 798 N.E.2d 895, 899–900 (Ind.Ct.App.2003) ("In reviewing a trial court's decision to give a tendered jury instruction, we consider (1) whether the in-

struction correctly states the law, (2) is supported by the evidence in the record, and (3) is not covered in substance by other instructions."). Although Marks did not object on this ground, we note that the substance of the challenged instruction is covered by another instruction that sets out the definition of "intoxicated" in Indiana Code Section 9–13–2–86. Appellant's App. at 113.

Alcohol has been dropped, are we to consider the testimony such as evidence in making our decision?" Tr. at 300. Without notifying the parties, the trial court told the jury "that what they had heard from the officers was the evidence, and that was the evidence they were to consider, and their memory was the best source of it." *Id.* Marks characterizes the trial court's response as an improper ex parte communication in violation of his statutory and common law rights.

■ Indiana Code Section 34–36–1–6 states,

If, after the jury retires for deliberation:

(1) there is a disagreement among the jurors as to any part of the testimony; or

(2) the jury desires to be informed as to any point of law arising in the case;

the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

Our supreme court has held that the statute "creates in a defendant a substantial right to be present when the jury interrupts its deliberations to review evidence not commended to it by the trial court at the beginning of its deliberations." *Powell v. State*, 644 N.E.2d 855, 858 (Ind.1994). Marks contends that the trial court violated his substantial right to be present and thereby committed reversible error. *See Bouye v. State*, 699 N.E.2d 620, 627 (Ind. 1998) ("[B]ecause a substantial right has

been affected, violation of this statute [now Ind.Code § 34–36–1–6] is not harmless error.").

Even assuming, as Marks contends, that the jury's question expressed a desire to be informed as to a point of law, his argument is unavailing because the trial court did not give the jury "information" as contemplated by the statute. In *Pendergrass v. State*, 702 N.E.2d 716 (Ind.1998), the jury sent two notes to the trial court requesting guidance on whether it needed to make specific findings regarding the degree of two charged offenses. Without advising counsel or the defendant, "[t]he trial court 'responded to both notes that the Jury must refer to the Instructions with no further indications or specifications being given by the Court.' " *Id.* at 719. In addressing the defendant's claim that the trial court violated the statute, our supreme court explained that "[t]he statute does not require the presence of or notice to the parties or their attorneys whenever the trial court responds to a jury's request. Rather, notice or presence is required when 'information' is given. Because nothing was given to the deliberating jury in this case, the statute was not violated." *Id.* at 720. Here, the trial court did nothing other than essentially repeat its previous instruction that "[t]he evidence must be judged and considered from your memory of the testimony of the witnesses and such exhibits as may have been admitted for your examination." Appellant's App. at 123.[4] As such, we find no statutory violation.

4. We note that Marks did not request an admonishment or move to strike any reference to the BAC test or its result after the trial court issued its suppression ruling and dismissed the class C misdemeanor count. As for Mark's observation that the prosecutor mentioned the BAC test result in her opening statement and "presisted, in front of the jury, in attempting to get the BAC in through the

backdoor via [Officer] Andrews," Appellant's Br. at 16, we note that the trial court instructed the jury as follows:

The unsworn statements or comments of counsel on either side of the case should not be considered as evidence in the case. It is your duty to determine the facts from the testimony and the evidence admitted by the

 Marks also contends that the trial court violated the common law protection against ex parte communications, which "applies whenever jurors request *any* type of additional guidance from the court[.]" *Bouye,* 699 N.E.2d at 628. Our supreme court has

> repeatedly noted that the proper procedure is for the judge to notify the parties so they may be present in court and informed of the court's proposed response to the jury *before* the judge ever communicates with the jury. When this procedure is not followed, it is an *ex parte* communication and such communications between the judge and the jury without informing the defendant are forbidden. However, although an *ex parte* creates a presumption of error, such presumption is rebuttable and does not constitute *per se* grounds for reversal.

*Id.* (citations omitted).

For the reasons given above, we conclude that reversal is not required here. The trial court merely repeated its earlier instruction to the jurors to consider the evidence as they remembered it. Having found no grounds for reversal, we affirm.

Affirmed.

SHARPNACK, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

I concur but with respect to Part I would go a step further than does the majority holding that the instruction in question was harmless error.

Not only do I think such instruction is error and should not be given in any such case, I am unable to agree that the language used in the appellate court cases cited is appropriate in any context. To this extent, I would state a disapproval of *Ackerman v. State, Pickens v. State,* and *Ballinger v. State.*

As an example, I cannot subscribe to an implication that the trier of fact may appropriately conclude that impairment has been proved beyond a reasonable doubt merely because the person in question has "watery or bloodshot eyes." I would voice the same concern with regard to the individual's "unsteady balance" or mere "slurred speech."

I would not dispute that it might be rational for a trier of fact to consider all or a multiple combination of several of the seven enumerated such factors, but as we hold today, such rationale should not be imparted to the jury by way of formal instruction.

court and given in your presence, and you should disregard any and all information that you derive from any other source.

Appellant's App. at 123-24.