**Elizabeth A. VanWANZEELE,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A05–0901–CR–26.**

Court of Appeals of Indiana.

July 30, 2009.

Rehearing Denied Oct. 5, 2009.

Anthony V. Luber, South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Elizabeth A. Van-Wanzeele (VanWanzeele), appeals her conviction and sixteen-year sentence for burglary as a Class B felony, Ind.Code § 35–43–2–1.

We affirm.

### ISSUES

VanWanzeele presents six issues for our review, which we restate as:

(1) Whether the trial court abused its discretion by refusing to instruct the jury on residential entry as a lesser-included offense of burglary;

(2) Whether the trial court's instruction on the "breaking" element of burglary improperly emphasized one evidentiary fact, in violation of our supreme court's opinion in *Ludy v. State*, 784 N.E.2d 459 (Ind. 2003);

(3) Whether the trial court gave an incomplete instruction on the concept of reasonable doubt;

(4) Whether the trial court abused its discretion by determining that VanWanzeele's previous encounter with a police officer was irrelevant to whether that officer was biased against her in this case;

(5) Whether the prosecutor engaged in misconduct that requires reversal during her closing argument; and

(6) Whether her sentence is inappropriate.

### FACTS AND PROCEDURAL HISTORY

The evidence most favorable to Van-Wanzeele's conviction is as follows. On May 6, 2008, at approximately 2:00 a.m., Roxanne McEndarfer (McEndarfer) and Darnel Hayman looked out of their second-story window at The Meadows apartment complex in North Liberty, Indiana, and saw a light on in a car belonging to Daniel King (King) and Barbara Banaciewcz (Banaciewcz). After about ten minutes, a woman McEndarfer recognized as Van-Wanzeele emerged from the car with a flashlight and entered a nearby van. Van-Wanzeele left the van after approximately five minutes and began attempting to enter different apartments, which prompted McEndarfer to call police.

Van Wanzeele eventually entered King and Banaciewcz's apartment and turned on the bathroom light. VanWanzeele remained in the bathroom for "quite some time." (Transcript p. 126). She then went into the kitchen before emerging from the apartment carrying a six-pack of green bottles. McEndarfer walked outside and saw VanWanzeele give another person some Mountain Dew. When police arrived, VanWanzeele ran into her mother's apartment, which was in the same complex. North Liberty Police Department Officer Jason Westhafer (Officer Westhafer) knocked on the door of that apartment for five or ten minutes before VanWanzeele appeared, at which point Officer Westhafer arrested her. King told police that some Mountain Dew and a candy bar were missing from his kitchen, but he was unable to determine whether anything had been taken from his car, though he found two empty beer cans that were not his.

Later that same morning, King told Officer Westhafer that a set of keys were missing from his car and provided a description of the keys. Officer Westhafer, remembering that VanWanzeele had a set of keys in her possession when she was booked into jail, obtained a search warrant for VanWanzeele's personal property at the jail. North Liberty Police Department Captain Mike Sawdon (Captain Sawdon)

executed the search warrant and found King's keys in VanWanzeele's purse. Captain Sawdon eventually returned the keys to King.

On May 9, 2008, the State filed an Information charging VanWanzeele with burglary as a Class B felony, I.C. § 35–43–2–1. A jury trial was held on September 2–4, 2008. Despite VanWanzeele's testimony that she had not gone into King and Banaciewcz's apartment, the jury found her guilty as charged, and the trial court sentenced her to sixteen years in the Department of Correction (DOC).

VanWanzeele now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Residential Entry Jury Instruction

VanWanzeele first contends that the trial court should have instructed the jury on residential entry as a lesser-included offense of burglary. When asked to instruct the jury on a lesser-included offense, the trial court must first determine whether the lesser offense is inherently or factually included in the crime charged. *Wright v. State*, 658 N.E.2d 563, 566–67 (Ind.1995).

> [I]f a trial court has determined that an alleged lesser included offense is *either* inherently *or* factually included in the crime charged, it must look at the evidence presented in the case by both parties. If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction,

when requested, on the inherently or factually included lesser offense.

*Id.* at 567.

Here, the trial court acknowledged that residential entry is inherently included in the crime of burglary of a dwelling—both crimes require breaking and entering, while burglary of a dwelling includes the additional requirement of intent to commit a felony. *Compare* I.C. § 35–43–2–1.5 (residential entry) *with* I.C. § 35–43–2–1 (burglary). Still, the trial court declined to give the instruction on residential entry because it concluded that there was no serious evidentiary dispute on the intent to commit a felony element. We treat such a finding with deference and review only for an abuse of discretion. *McEwen v. State*, 695 N.E.2d 79, 84 (Ind.1998).

At trial, VanWanzeele testified that she never entered King and Banaciewcz's apartment. It was not her defense strategy to admit entering the apartment but to deny doing so with the intent to commit a felony therein. Nonetheless, she argues that the jury could have reached that conclusion on its own based on the evidence presented. She emphasizes the eyewitness testimony that she first went into the bathroom of the apartment before going into the kitchen, where the Mountain Dew and candy bar were. She contends that the jury could have relied on this evidence to conclude that she did not have the intent to steal anything when she went into the apartment, but rather formed that intent after entering the apartment. This, VanWanzeele maintains, constituted a serious evidentiary dispute on the element of intent to commit a felony.

We have addressed this same basic argument before. In *Campbell v. State*, 732 N.E.2d 197 (Ind.Ct.App.2000), the defendant gave a taped statement to police in which he admitted his participation in the burglary of a house. However, at his trial

for burglary as a Class B felony, he testified that he had never entered the residence in question but instead remained in a car outside at all times. The defendant requested a jury instruction on residential entry as a lesser-included offense, but the trial court declined to give the instruction, and the jury found the defendant guilty on the burglary charge. On appeal, the defendant argued that there was a serious evidentiary dispute on the element of intent to commit a felony and that the trial court therefore should have given the residential instruction. We held:

> That there was thus an evidentiary dispute in this case created by the discrepancy between Campbell's two versions of what happened on the night of the burglary is clear. *However, the dispute did not revolve around whether Campbell had the requisite intent to commit a felony when he entered the victim's residence; rather, the dispute focused on the more basic issue of whether Campbell ever entered the residence at all.* If the jury had chosen to believe Campbell's testimony that he had remained in the car and was an innocent bystander while his companions burglarized the residence, they would have been required to acquit Campbell not only of his burglary charge, but also of residential entry, if an instruction on that offense had been given, since entering is an element common to both offenses. Therefore, we fail to see any error in the trial court's refusal to instruct the jury on residential entry[.]

*Id.* at 208 (emphasis added).

The same can be said here. The dispute in this case focused on the basic issue of whether VanWanzeele entered King and Banaciewcz's apartment at all. We agree with the State that there was no evidentiary dispute, let alone a serious one, on the issue of whether VanWanzeele had the intent to commit a felony—specifically, theft—when she entered the apartment. As such, the trial court did not abuse its discretion by refusing to instruct the jury on residential entry as a lesser-included offense of burglary.

II. *"Breaking" Jury Instruction*

Next, VanWanzeele challenges the instruction given by the trial court on the "breaking" element of burglary, which stated: "Opening an unlocked door or raising an unlocked window is sufficient to constitute a breaking." (Appellant's App. p. 85). VanWanzeele contends that this instruction "emphasized one evidentiary fact," in violation of our supreme court's statement in *Ludy v. State*, 784 N.E.2d 459, 461 (Ind.2003), that "[i]nstructions that unnecessarily emphasize one particular evidentiary fact ... have long been disapproved." The problem with VanWanzeele's argument is that she fails to point to any fact in evidence in this case that was emphasized by the challenged instruction, that is, any evidence suggesting that she entered King and Banaciewcz's apartment by opening an unlocked door or by raising an unlocked window. Rather, the theory of the State's case was that VanWanzeele took the apartment key from the vehicle and used it to unlock King and Banaciewcz's door. (Tr. pp. 321, 341). It cannot be said, then, that the trial court's "breaking" instruction unnecessarily emphasized any particular evidentiary fact. We agree with the State that the instruction merely "illustrate[d] to the jury what constitutes 'breaking' under the law, as there was no evidence of a layman's 'breaking' in this case—no shattered window or kicked-in door." (Appellee's Br. p. 11); *see Gravens v. State*, 836 N.E.2d 490, 493 (Ind.Ct.App.2005) ("The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend

the case clearly and arrive at a just, fair, and correct verdict."), *trans. denied.* VanWanzeele has failed to persuade us that the trial court abused its discretion by giving its breaking instruction.[1]

### III. *Reasonable Doubt Instruction*

■ VanWanzeele contends that the reasonable doubt instruction given by the trial court was incomplete and that the trial court should have supplemented it with an instruction tendered by her. Instructing the jury is a matter within the discretion of the trial court. *Glenn v. State*, 884 N.E.2d 347, 357 (Ind.Ct.App. 2008), *trans. denied.* As such, we will reverse a trial court's decision regarding jury instructions only for an abuse of discretion. *Id.*

The reasonable doubt instruction given by the trial court provided as follows:

A reasonable doubt is a fair, actual and logical doubt that arises in your mind after an impartial consideration of all the evidence and circumstances in the case. It should be a doubt based upon reason and common sense and not a doubt based upon imagination or speculation.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you should find her guilty. If on the other hand, you think there is a real possibility that she is not guilty, you must give her the benefit of the doubt and find her not guilty.

The rule of law which requires proof beyond a reasonable doubt applies to each juror individually. Each of you must refuse to vote for conviction unless you are convinced beyond a reasonable doubt of the defendant's guilt. To return any verdict, your verdict must be unanimous.

(Appellant's App. p. 81). VanWanzeele's attorney objected to this instruction "[o]n the grounds that it fails to adequately instruct the jury on reasonable doubt." (Tr. p. 311). VanWanzeele's attorney asked the trial court to also give the following instruction: "A reasonable doubt may arise from the evidence or from a lack of evidence or from a conflict in the evidence on or concerning a given fact or issue." (Appellant's App. p. 33). He argued that without this additional language "the jury could be misled into not believing that either a lack of evidence or a conflict in the evidence, could give rise to a reasonable doubt." (Tr. p. 312).

■ VanWanzeele waived this argument. The trial court gave the challenged reasonable doubt instruction in its preliminary instructions to the jury, and there is no indication in the record before us that VanWanzeele objected. Where a final in-

---

1. In *Higgins v. State*, 783 N.E.2d 1180 (Ind. Ct.App.2003), *trans. denied*, the jury was instructed that "the opening of a locked or unlocked door is sufficient" to constitute a breaking. On appeal, the defendant argued that the instruction created an "improper mandatory presumption," in violation of the United States and Indiana Constitutions. *Id.* at 1185. We rejected that argument, but we cautioned that instructions stating that cer-tain evidence "is" sufficient to establish an element of a crime should not be given so as to avoid potential constitutional problems. *Id.* at 1186–87. VanWanzeele does not make a mandatory presumption argument, so we have no reason to revisit our holding in *Higgins.* Nonetheless, we continue to caution against instructions stating that certain evidence "is" sufficient to establish an element of a crime.

struction was read to the jury as a preliminary instruction without objection from the defendant, the defendant has waived his right to appeal the final instruction. *See Hollowell v. State,* 707 N.E.2d 1014, 1022–23 (Ind.Ct.App.1999).

Waiver notwithstanding, there is some merit in VanWanzeele's argument. VanWanzeele directs us to *Harris v. State,* 155 Ind. 265, 58 N.E. 75, 76 (1900), in which the jury was instructed that "[a] doubt, to justify an acquittal, must be reasonable, and must arise from a fair and impartial consideration of all the evidence in the case." On appeal, the defendant argued that "a reasonable doubt may not only arise out of the evidence, but may also be created in the minds of the jury by reason of the lack of evidence." *Id.* at 77. Our supreme court agreed, stating, "This [ ] contention is well supported by the decisions of this court, and to this extent, at least, it may be said that the charge in question is too narrow." *Id.* Today, the principle stated in *Harris* lives on in the Indiana pattern jury instruction on reasonable doubt—criminal instruction No. 1.15—which provides, in part, that "[a] reasonable doubt may arise either from the evidence or from a lack of evidence." We agree with VanWanzeele that the trial court abused its discretion by refusing to instruct the jury that reasonable doubt can arise from a lack of evidence.

■ Nonetheless, before a defendant is entitled to reversal based on a perceived instructional error, she must affirmatively show that the error prejudiced her substantial rights. *Glenn,* 884 N.E.2d at 357. VanWanzeele contends that the trial court's reasonable doubt instruction "may have misled" the jury because "the State did not produce certain evidence and there were some conflicts in the testimony of some of the State's witnesses." (Appellant's Br. pp. 17–18). However, as the State notes, she does not say what evidence the State failed to produce or explain which testimonial conflicts require reversal. Therefore, even if VanWanzeele had not waived this issue by failing to object when the instruction was given as a preliminary instruction, she has failed to affirmatively demonstrate how her substantial rights were prejudiced. *See Harris,* 58 N.E. at 77 (denying relief despite instructional error because defendant was not "prejudiced in any of his substantial rights").

## IV. Alleged Bias of Captain Sawdon

■ VanWanzeele argues that the trial court erred by limiting her cross-examination of Captain Sawdon. When Captain Sawdon took the stand to testify about finding King's keys in VanWanzeele's purse, VanWanzeele's attorney sought to establish bias on his part by questioning him about an occasion on which he stopped VanWanzeele and took prescription medication from her. The State objected, and the following exchange took place:

Court: What is the relevance of the question?

Defense: It shows bias on the part of this officer who had an earlier confrontation with her. He took prescription medication from her, and when it was ordered to be returned to her, refused to return it to her, which indicates an ill-will toward her.

Court: It seems to me the relevance of this witness as it relates to this trial, doesn't have anything to do with dealing with the defendant directly, but just him going to the jail to execute the search warrant and recovering property and doing whatever he did with it there. So therefore, I think the bias at this point is irrelevant, so the objection is sustained.

. . .

Defense: We would show that we believe that it is relevant, because my client has insisted that those keys were not obtained from her property, but were substituted by officers who had a personal bias toward her.

Court: My ruling is the same, it's sustained.

Defense: Just in order to preserve our Record, we believe that under [Evidence] Rule 616, the defendant is entitled to show bias for any purposes of a witness who may testify. And for that reason we believe that if this officer were permitted to testify in relation to this matter, that we could extract from him an admission that he had in fact had [sic] taken prescription medication from Ms. VanWanzeele, and that he attempted to indicate she had been trying to sell that medication to someone else, and that did not occur. That there were no charges brought against her. That there was an order of the St. Joseph County Prosecutor's Office ordering the police to return the property to her, and that he refused to return her medication to her.

Court: Well, number one, I don't know that the Prosecutor's Office can order any police department to do anything. But second of all, you may be right under [Evidence Rule] 616; however, it is irrelevant. And number three, under [Evidence Rule] 611, I have the right to limit testimony and exclude things that I think are a waste of time in order to advance the case. For all of those reasons, my ruling is the same, the objection is sustained.

(Tr. pp. 245–47).

■ The first ground relied upon by the trial court in limiting VanWanzeele's cross-examination of Captain Sawdon was relevancy. Under Indiana Rule of Evidence 401, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The trial court has wide discretion in determining the relevancy of evidence. *Williams v. State*, 749 N.E.2d 1139, 1142 (Ind.2001). Therefore, we review a trial court's ruling as to relevance only for an abuse of discretion. *Id.*

We cannot say that the trial court abused its discretion by determining that Captain Sawdon's past interactions with VanWanzeele are irrelevant to whether Captain Sawdon is biased against VanWanzeele. VanWanzeele claimed that Captain Sawdon failed to comply with an order to return prescription medication to her, but she offered no evidence tending to show why he failed to do so. Without such evidence, it would have been pure speculation for the trial court to conclude that the reason was some ill will toward VanWanzeele. It is possible that Captain Sawdon was merely following an order or legal advice from some other party. And we certainly cannot hold that any prior interaction between a police officer and a citizen is evidence of bias, especially when the citizen has a criminal record as long as VanWanzeele, and especially in a small town like North Liberty.[2] Given the broad discretion enjoyed by the trial court in these matters, and the lack of evidence of Captain Sawdon's motive, we find no error.

**2.** The website for the North Liberty Chamber of Commerce lists an estimated population of 1,362 for July 2005. *See* http://www.north libertychamber.org/north_liberty_indiana. html (last accessed June 29, 2009).

## V. *Prosecutorial Misconduct*

 During its cross-examination of VanWanzeele, the State sought to impeach her credibility by adducing testimony that she has a prior conviction for conversion. Then, during its closing argument, the State referred to that conviction as one for "stealing." (Tr. p. 340). VanWanzeele's attorney objected, but the trial court overruled the objection. VanWanzeele argues that the trial court "should have sustained the objection and properly admonished the jury." (Appellant's Br. p. 21).

 Though VanWanzeele does not frame it as such, this is essentially a claim of prosecutorial misconduct. In reviewing such a claim, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether that misconduct, under all of the circumstances, placed the defendant is a position of grave peril to which he or she should not have been subjected. *Coleman v. State,* 750 N.E.2d 370, 374 (Ind. 2001).

 To be sure, "stealing" is different than "conversion." *See Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). "To steal means to take away from one in lawful possession without right with the intention to keep wrongfully. Conversion, however, may be consummated without any intent to keep and without any wrongful taking, where the initial possession by the converter was entirely lawful." *Id.* at 271, 72 S.Ct. 240. As such, we agree with VanWanzeele that the trial court should have sustained her objection and admonished the jury on the difference between "stealing" and "conversion." That being said, VanWanzeele makes no argument whatsoever that the prosecutor's statement placed her in a position of grave peril to which she should not have been subjected. Conversion, while not necessarily as serious as "stealing," still involves the unauthorized control of another person's property and, as a crime of dishonesty, tends to damage VanWanzeele's credibility. *See* I.C. § 35–43–4–3. Therefore, even if we were to conclude that the prosecuting attorney engaged in misconduct by referring to VanWanzeele's conversion conviction as a conviction for "stealing," VanWanzeele has failed to persuade us that reversal would be required.

## VI. *Sentencing*

 Finally, VanWanzeele makes a brief argument that her sentence is inappropriate. The advisory sentence for a Class B felony is ten years, with the maximum being twenty years and the minimum being six years. I.C. § 35–50–2–5. VanWanzeele was sentenced to sixteen years, four years shy of the maximum. Indiana Appellate Rule 7(B) permits us to revise a sentence if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B); *see also Childress v. State,* 848 N.E.2d 1073, 1079 (Ind.2006). The burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress,* 848 N.E.2d at 1080. VanWanzeele has failed to carry this burden.

While we agree with the trial court that there was nothing particularly egregious about VanWanzeele's crime, VanWanzeele's sixteen-year sentence is justified by her extensive criminal history. When she was seventeen, she was sent to Girls School for theft (a Class D felony if committed by an adult), false reporting, three counts of check deception, consumption of alcohol, possession of alcohol, and possession of marijuana. In 1999, after turning eighteen, VanWanzeele was put on probation for minor consuming, a Class C misdemeanor. She violated her probation and was sent to jail for twenty days. In 2001,

she was again put on probation for disorderly conduct, a Class B misdemeanor. In 2002, VanWanzeele committed forgery, her first felony. She was sentenced to a short jail term to be followed by probation. She violated the terms of her probation twice more. In 2003, VanWanzeele committed criminal conversion, a Class A misdemeanor, and was sentenced to time served. In 2004, she was convicted of misdemeanor counts of residential entry and possession of a controlled substance, for which she was sentenced to probation. She violated probation yet again. The same year, she also committed misdemeanor criminal mischief. In 2005, VanWanzeele was convicted of two counts of misdemeanor battery. She committed separate violations of her probation in each case. Also in 2005, VanWanzeele committed burglary as a Class B felony. She was sentenced to six years in the DOC with three years suspended and was released to probation on February 17, 2007. Her probation was terminated on April 29, 2008, just a week before she committed the instant crime. In addition, when she committed this crime, VanWanzeele had a charge of Class C felony burglary pending in Elkhart County.

Several things leave us convinced that the lengthy prison sentence imposed by the trial court is appropriate. First, because this was VanWanzeele's third felony as an adult, she could have easily been found to be an habitual offender, which could have added as many as thirty years to her sentence. *See* I.C. § 35–50–2–8. Second, many of VanWanzeele's prior offenses are very similar to the instant offense, in that they involve acts of dishonesty and the property of other people: theft, false reporting, check deception, forgery, criminal conversion, residential entry, and

two counts of burglary with a third pending. Third, VanWanzeele has been placed on probation in lieu of lengthy prison sentences in the past, and she has violated her probation almost every time. It is apparent that short prison stints have little, if any, deterrent effect on VanWanzeele. Therefore, we cannot say that her sentence is inappropriate.[3]

### CONCLUSION

Based on the foregoing, we conclude that (1) the trial court did not abuse its discretion by refusing to instruct the jury on residential entry as a lesser-included offense of burglary, (2) the trial court's instruction on the "breaking" element of burglary did not improperly emphasize one particular evidentiary fact, (3) VanWanzeele waived her objection to the trial court's final instruction on the concept of reasonable doubt when she failed to object when the same instruction was given as a preliminary instruction, (4) the trial court did not abuse its discretion by determining that VanWanzeele's previous encounter with Captain Sawdon was irrelevant to whether Captain Sawdon was biased against VanWanzeele in this case, (5) VanWanzeele has failed to establish that she is entitled to reversal of her conviction based upon the prosecuting attorney's reference to her criminal conversion conviction as a conviction for "stealing," and (6) VanWanzeele's sixteen-year sentence is not inappropriate.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.

---

**3.** VanWanzeele also suggests that the trial court abused its discretion by failing to identify as a mitigating circumstance the fact that she gave birth while incarcerated in this case.

She fails to develop this argument and has therefore waived it. *See* Ind. Appellate Rule 46(A)(8)(a).